## RIGHTOR vs. GRAY.

Where a guardian presents his account for settlement, and after being examined the Probate Court refuses to confirm it, this is not such final action and judgment as to prevent the court, at a subsequent term, from again examining the account and then affirming it.

It is the duty of the Probate Court, on the presentation of a guardian's account for settlement, after the public notice required by law, to examine it, and cause any errors in it to be corrected, whether exceptions be filed to it or not.

An order of the Probate Court requiring a second guardian to pay to the first an amount found to be due him on the settlement and confirmation of his account against the ward, without notice to, or the voluntary appearance of, the second guardian, is an irregularity, for which such order will be quashed.

To submit a cause, by consent, upon the transcript of the record presented with a petition for a certiorari, instead of causing the writ to be issued and a transcript of the record to be returned therewith, is an irregular practice, but perhaps, the writ having been ordered and the issuance and return waived by the parties, the court acquired jurisdiction of the subject matter.

*Appeal from Phillips Circuit Court.*

Hon. MARK W. ALEXANDER, Circuit Judge.

PIKE & SON, for the appellant.

The writ of certiorari was not issued and returned. No consent of parties could dispense with the writ itself, without which there was no proceeding. But if the case were really in court, and it had power and jurisdiction to examine the order of allowance of Rightor's account, and the order of payment, it is surely clear that those orders were not void.

The Probate Court had, in October, 1855, *declined* or *refused* (for both terms are used as synonymous) to confirm Rightor's account as filed. No exceptions had been filed to it, or *ever were* filed to it. It does not appear that publication had been

made of it, as required by law, prior to October term, 1855; but that had been done prior to February, 1859.

The court might well *refuse* or *decline* to confirm the account for want of publication.

The duty of the court was, if the account was regularly before it for consideration, to examine it, to correct it if necessary or if justice required it, and having ascertained what was its true state, so to decide.

A refusal to confirm, is not, in terms or effect, a rejection or a judgment in bar.

As the terms of the order of 1855 do not *necessarily* import a final judgment in bar against the account, neither the new guardian nor this court has the right to insist on its being so taken and interpreted. To *quash* a judgment on certiorari it must be NECESSARILY *coram non judice.*

And, as the Probate Court had no *right* to *reject* the account, but was bound to take it up, examine it, correct it, if it required correcting, and settle it, this court has no right to conclude that it *meant* to do what it *could* not legally do, when language used by it does not necessarily require such a conclusion.

Mr. Chief Justice ENGLISH delivered the opinion of the court.

William R. Rightor had been, prior to January, 1855, the guardian, in Phillips county, of the infant heirs of Henry Yerby, deceased. On the 22d of January, he filed in the Probate Court of that county his settlement account, as such guardian, of receipts and disbursements on account of his wards, from May, 1853, to January, 1855, claiming a balance due himself of $648 40. This account is endorsed as follows:

" The within settlement examined, and continued until next term for confirmation. January term, 1855. A. G. UNDERWOOD, judge."

" On examination of the within settlement, I *decline confirming it.* October term, 1855. A. G. UNDERWOOD, judge."

And, at the October term, 1855, on the 12th of December, 1855, the following order was made of record:

"The settlement account of William R. Rightor, as guardian of H. Yerby's heirs, which was filed at the January term of this court, and continued until the present term for confirmation, was this day presented to the court, which being examined the court doth refuse to confirm the same."

. On the 5th of February, 1859, the Probate Court again took up the account, and made the following order :

"The settlement account of William R. Rightor, as guardian of the heirs of Henry Yerby, deceased, which was filed at the January term of the court, 1855, and continued until the present term (was taken up), and it appearing to the satisfaction of the court, from the affidavit of Q. K. Underwood, publisher of the Southern Shield, a newspaper published weekly in the city of Helena, county of Phillips, State of Arkansas, that due and legal notice of the filing of said settlement account had been given by publication in said newspaper, for the number of times, and within the time prescribed by law; and there being no exceptions filed to said settlement account, the same is confirmed, and ordered to be spread upon the record."

On the 26th of January, 1860, on motion of Rightor, the Probate Court made an order requiring Peyton R. Gray, his successor in the guardianship, to pay over to him the balance found due him of $648 40.

On the 5th of March, 1860, Gray presented a petition to the judge of the Circuit Court, setting out the facts above stated, exhibiting a transcript of the record of the proceedings of the Probate Court in the matter, insisting that the order of the court of 12th December, 1855, refusing to confirm the account, was a final judgment, that the power of the court over the subject was then exhausted, and that the subsequent orders were null and void, and praying for a writ of *certiorari*, etc., etc.

The circuit judge, at chambers, endorsed on the petition an order to the clerk of the Probate Court to transcribe and certify the record of the proceedings therein to the Circuit Court; and

an order to the clerk of the Circuit Court to issue a *sci. fa.* to Rightor, and a provisional supersedeas.

The *sci. fa.* was issued, and served on Rightor, but no writ of *certiorari* was issued.

At the ensuing term of the Circuit Court, the parties appeared, and by consent the transcript accompanying the petition was made the return of the clerk on writ of certiorari, and the cause was submitted to the court; and the court quashed the judgment of the Probate Court of 5th February, 1859, perpetually superseded the order of 26th January, 1860, and adjudged the costs against Rightor, and he appealed.

The circuit judge should have ordered the clerk of the Circuit Court to issue a writ of certiorari, and the clerk of the Probate Court should have returned with the writ, directed to, and served upon him, a transcript of the proceedings in the Probate Court, etc. Then the matter would have been regularly before the Circuit Court for adjudication. The parties, however, waived the writ and return, and submitted the matter to the court, for adjudication, upon the transcript exhibited with the petition for certiorari, and, though this was an irregular practice, the court, perhaps, acquired jurisdiction of the subject matter thereby.

For what reason the Probate Court declined or refused to confirm the settlement account of Rightor, on the 12th December, 1855, is not shown. Nor does it appear whether publication of the filing of the account for settlement had been made, as required by the statute.

The refusal of the court to confirm the account at that time, was no final disposition of the account. Its jurisdiction of the subject matter was not then exhausted.

It was the duty of the probate judge to take up the account, after the public notice required by law, and examine it, whether exceptions were made to it or not, it being his peculiar province to protect the estates of orphan minors from waste, and if he found no errors or unjust charges upon its face, to confirm it, and if there were apparent errors, it was his duty to cause

them to be corrected, and the account to be restated, and then confirmed. See *Digest, chapter* 81, *section* 35; *Ib., chapter* 4, *sections* 130, 131, 132.

The refusal of the judge to confirm the account, merely left it open and unsettled—left the guardianship of Rightor in an unsettled condition. There was nothing definite in the action of the judge for him to except to, and nothing final for him to appeal from. Had the judge refused finally to act further in the matter, he might have been compelled by mandamus.

We think the matter was still under his control, and within his jurisdiction, when the order of 5th February, 1859, was made, confirming the account, and ordering it to be spread upon the record.

The judgment of the Circuit Court must be reversed, and the cause remanded, with instructions to the court to affirm the order of the Probate Court of 5th February, 1859, confirming the account.

But it appearing that the order of 26th January, 1860, requiring Gray, the successor of Rightor, to pay over to him the balance found due him, was made without any notice to Gray, and without his voluntary appearance in the Probate Court, the Circuit Court must be further instructed to quash that order for irregularity, and remand the cause to the Probate Court for further proceedings. (See *act of* 17*th February*, 1859, *Pamphlet Acts, p.* 172.

On the remanding of the cause to the Probate Court, Gray must be considered as in court.