JONES, MAYOR *v.* LEIGHTON.

4-5935                                                    142 S. W. 2d 505

Opinion delivered April 29, 1940.

George K. Cracraft and W. G. Dinning, for appellant.

A. M. Coates, for appellee.

GRIFFIN SMITH, C. J. The city council of West Helena, by resolution, found that neither B. E. Leighton nor M. C. Conner had subscribed to the statutory oath of office[1] as commissioner of street improvement district No. 3. The positions were declared vacant. The circuit court enjoined the council from making new appointments during pendency of litigation. By certiorari the commissioners sought review. On hearing the resolution was set aside. The mayor, city clerk, and members of the board of aldermen, have appealed.

Two alleged errors are assigned: (1) The circuit court did not acquire jurisdiction because no order for a writ of certiorari was made; therefore none was issued by the circuit clerk, and no certified record of the proceedings of the city council was before the court. (2) Conceding (while denying) that proceedings before the council and its resolution were certified, the record was not sufficient to justify the action taken by the circuit court.

Validity of the district, sale of its bonds, etc., are not questioned. Appellees contend they were named commissioners March 5, 1928; that April 2 the requisite number of property-owners authorized them to proceed with the improvements contemplated, and that they have continued to act.

*First.—Record Before the Court.* We agree with appellants that the circuit court did not direct issuance of a writ of certiorari. There was no command

---

[1] Pope's Digest, § 7353.

that the documents be brought up. On the contrary, the express direction is that ". . . all matters pertaining to the formation of the district . . . be segregated and preserved [by the city clerk] and held in readiness to be used in evidence in the trial of this cause."

The council's action in removing the commissioners had nothing to do with creation of the district.

Direction that the records be segregated and preserved was issued July 6, 1939. August 16 the city clerk filed certain records, and by agreement of counsel copy of the minutes of the council meeting of June 30, 1939, was introduced.

In the motion for a new trial the fifth assignment is that: "The court erred in granting the writ of certiorari and in quashing the proceedings of the city council."

While final hearing was not until October 18, all records were before the court, and the cause proceeded as though they were brought up in response to certiorari. Although jurisdiction of the subject-matter cannot be conferred by consent, procedure may be waived. *Rightor v. Gray*, 23 Ark. 228, holds that formality of issuance of a writ of certiorari may be dispensed with where the matter sought to be certified is before the court. In that case, however, there was allocatur of the writ, for the opinion says: "The circuit judge, at chambers, indorsed on the petition an order to the clerk of the probate court to transcribe and certify the record of the proceedings therein to the circuit court." At the ensuing term the parties appeared, and by consent the transcript accompanying the petition was made the return of the clerk on the writ of certiorari. In the opinion it was said that the judge should have ordered the clerk to issue the writ, "Then the matter would have been regularly before the circuit court for adjudication. The party, however, waived the writ and return, and submitted the matter to the court for adjudication, upon the transcript, exhibited, with the petition for certiorari, and though this was an irregular practice, the court perhaps acquired jurisdiction of the subject-matter thereby."

Appellants cite *Marshall, Administrator, et al.,* v. *Ramsauer,* 30 Ark. 532, where it was said: "In the case before us, so far as appears from the transcript, . . . no writ has been issued, and, of course, no return. The transcript which has been copied and sent up to this court does not even appear to have been filed, and is, in fact, no part of the record in this case. Until the records sought to be set aside and quashed are brought before the court in obedience to the writ, there is no case before it."

In *McKay et al.* v. *Jones et al.,* 30 Ark. 148, the court said: "The greatest extent to which we have gone in sustaining the jurisdiction of the circuit court in cases of certiorari has been to permit the parties, by consent, to waive the necessity of a writ and try the case upon a transcript filed." *Rightor* v. *Gray* was cited as authority.

There is the following comment in *Phillips* v. *Desha,* 58 Ark. 250, 24 S. W. 249: "The writ was ordered but not issued. It was not waived, if it could be waived. There was no such record before the court as the law requires upon proceedings by certiorari."

Although in the case at bar the court's order clearly discloses a failure to direct issuance of the writ, the petition contained a prayer for certiorari and for a restraining order.

The question which does not seem to have been decided is whether the circuit court can acquire jurisdiction of the subject-matter without directing issuance of the writ where the matter sought to be reviewed is action of a city council.

Cases cited by appellants and appellees are not entirely in point. In the Rightor-Gray case issuance of the writ was directed, and in the Marshall case there was a similar order. So, in the Phillips-Desha case.

The view appears to have been expressed in the McKay case that ". . . the parties, by consent [may] waive the necessity of a writ." Whether this language would have been used if the court had not *directed* issuance of the writ it is impossible to say.

Section 2865 of Pope's Digest confers upon circuit courts power ". . . to issue writs of certiorari to any officer or board of officers, city or town council, or any inferior tribunal of their respective counties, to correct any erroneous or void proceeding or ordinance, and to hear and determine the same."

Section 2866 of the Digest is: "Affidavits may be read on such applications, and evidence *dehors* the record may be introduced by either party on the hearing. The record of any such inferior judicial tribunal shall be conclusive as far as the same may extend, but the acts of any executive officer or board of such shall only be *prima facie* evidence of their regularity and legality."

The circuit court, we think, acquired jurisdiction of the subject-matter when the petition for certiorari was filed. Any other construction would permit the court to create its own jurisdiction by merely signing an order. Thereafter, procedural matters could be waived.

In *McAllister* v. *McAllister, ante* p. 171, 138 S. W. 2d 1040, power of the circuit court of Washington County to review, on certiorari, action of the city council of Fayetteville in removing civil service commissioners was reviewed. In the opinion it was said: ". . . when the council enacted [the resolution discharging the commissioners] it was acting in a legislative capacity as distinguished from judicial or quasi-judicial."

Distinction between the McAllister case and the instant appeal is that in the former the council, by resolution, removed the civil service commissioners pursuant to authority granted by the general assembly, while in the appeal here the council determined as a matter of fact that Leighton and Conner had not filed their oaths of office. Effect of such failure by a commissioner is to invest the council with power to appoint a successor, the presumption[2] being that the commissioner has declined to serve. The statute creates the presumption. The council merely ascertains and declares whether the oath has, or has not, been filed, as the evidence warrants.

---

2 Pope's Digest, § 7355.

The procedure is quasi-judicial; hence, certiorari is appropriate when review is sought.

*Second.—Was There Sufficient Evidence to Justify the Council's Action?*—The statutory oath required of a commissioner was executed by C. G. Raff, Jake Lederman, and Mrs. Doll Sherman, May 8, 1928. It was indorsed by the city clerk "Filed June 30, 1928."

Leighton and Conner testified they executed oaths of office, but did not remember having filed them. Interested parties who applied to the city clerk were told there was no record that the certificates had been filed, and that he had no recollection of having received them.

D. S. Heslip testified that by permission of the city clerk he searched among old records in a desk at the city hall and found a certificate apparently signed by Leighton and Conner. Their signatures were verified. Miss Bernice Reigle accompanied Heslip and supported his testimony.

The certificate urged in behalf of Leighton and Conner had originally been written: "We, C. G. Raff, Mrs. D. Sherman, and Jake Lederman, do solemnly swear," etc. In the body of the document "C. G. Raff" and "Mrs. D. Sherman" had been marked through. Above Raff's name was written "M. C. Conner." Above Mrs. Sherman's name was written "B. E. Leighton."

Three lines were typed for signatures. Lederman signed above the first line, Raff above the second, and Conner above the third. Raff's name had been "lined" through. Leighton's name was written below the third line. The document was acknowledged before Lula Maye Williams, notary public, May 8, 1928. Miss Williams (Mrs. Maxwell at the time of trial) testified that the certificate was prepared in the offices of Sheffield & Coates, attorneys who organized the district; that the signatures were those of Leighton and Conner; that she did not write the substitutions, and did not remember the day of acknowledgments. Witness was stenographer for the law firm.

In respect of the "discovered" certificate, the city clerk, on cross-examination, testified: "I could not

swear that it was, or that it was not, filed." It was shown that very few of the papers filed in connection with organization of the district bore filing dates. The clerk testified that, although Mrs. Sherman and Raff were appointed commissioners, and filed their oaths of office June 30, 1928, the council did not act upon the refusal of either to serve.

Minutes of the council for May 7, 1928, show appointment of Mrs. Sherman, Raff, and Lederman as commissioners. At a meeting March 4, 1929, the resolution shown in the third footnote was adopted.[3]

Of significance is the testimony of City Clerk W. E. Bailey (who held the same position in 1929). At that time records incident to organization of the district were required by attorneys who were asked to approve a bond issue. Following the certificate in which Conner, Leighton, and Lederman evidenced their oaths of office the following appears: "I, W. E. Bailey, city clerk of the city of West Helena, Arkansas, do hereby certify that the foregoing is a true and correct copy of the oath of the commissioners filed in my office on the 8th day of May, 1928. July 23, 1929."

The real difficulty is in determining whether the council acted on substantial evidence in finding that Leighton and Conner had not filed their oaths of office. The clerk's certificate, while persuasive, is only, *prima facie*, evidence of his official act. If he had denied the transaction, or explained it as an error, the certificate alone could not be considered. But there was no denial in express terms. That it was found in a desk at the city hall creates a presumption it was filed, but there can be no presumption such filing occurred within ten days from its execution unless we indulge the further presumption that the clerk would not have received it at a

3 "Whereas, at a meeting of the city council on the 7th day of May, 1928, in the matter of formation of street improvement district No. 3, West Helena, Arkansas, the council passed the following resolution: 'Be it resolved by the mayor and city council of the city of West Helena, Ark., that ~~C. G. Raff~~ (B. E. Leighton), ~~Mrs. D. Sherman~~ (M. C. Conner) and Jake Lederman, . . . be and they are hereby appointed board of commissioners' . . . [And] Whereas, it appears that the city clerk, in preparing the minutes of the meeting of May 7, 1928, failed through error or oversight to record said resolution, and that it is necessary now to amend the minutes of said meeting so as to show the adoption of said resolution. . . ."

belated period. Such a conclusion could be reached only by imposing a presumption·upon a presumption, and this cannot be done.

However, the council's action of March 4, 1929, stands unimpeached. There it was said that Leighton and Conner were appointed.. When the *nunc pro tunc* resolution was adopted, these commissioners had been serving almost ten months. By importing to the council's public acts that verity the law accords, it may be said that the resolution would not have been passed if the commissioners had failed to file their oaths of office. The only evidence contradicting this presumption is circumstantial. In this situation we do not think the court erred in refusing to permit the council to declare the positions vacant. The commissioners had served more than ten years, and the flaw urged against continued tenure is so obviously technical that judicial sanction should not aid its consummation unless the plain letter of the law so directs.

In *Hall* v. *Bledsoe,* 126 Ark. 125, 189 S. W. 1041, Chief Justice McCulloch discussed the functions of certiorari. The writ was granted at the instance of Dr. Bledsoe, directed to the board of control of the state hospital for nervous diseases. It was held that the circuit court; while not empowered to try the couse *de novo,* might hear evidence *dehors* the record in order to determine what evidence was before the board. The practice there approved seems to have been followed by the circuit court in the instant case.

Affirmed.